**BOARD OF PARK COMMISSIONERS OF CLEVELAND METROPOLITAN PARK BOARD v GLEN VALLEY CLUB et**

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided July 28, 1932

334 334

FARR, J (7th Dist), MIDDLETON and
MAUCK, JJ (4th Dist), sitting.

Locher, Green & Woods, Cleveland, for
plaintiff in error.

Harry F. Payer, Cleveland, for defendants
in error.

MAUCK, J.

The area appropriated consisted of about one hundred and thirty eight acres, the fee to which was in the Glen Valley Club. This club was a corporation organized not for profit under the statutes of the State of Ohio with a capital stock of $10,000 divided into twenty shares of $500 each. The corporation was organized in 1904 for the purpose of holding the land for the benefit of its several stockholders. These were sixteen in number. The land was wild and rugged. The club made leases in perpetuity to its individual members for parcels of property along the higher level of this tract. These leases contained restrictions limiting the use of the demised tracts to a single dwelling house and prohibited the use of the premises in any way that would be annoying either to the lessor or any of its members, and prevented the assignment or underletting of the leasehold without the consent of the lessor, and gave the lessor an option of first purchasing the leasehold before it could be sold to an outside party. The lease contained appropriate conditions for the forfeiture and re-entry by the lessor for any violation of the lease. The several lessees constructed upon their leaseholds beautiful residences appropriate to the place and in keeping with the general purpose of all those who had joined in this enterprise. Their common purpose was to have indi-

vidual homes where they might enjoy in common the benefit of a hundred acres of wild land of scenic beauty. The leases disclose that while the club retained the fee to the various leaseholds, and while each lessee had such an interest in all of the other leases as to prevent other lessees from using their property to his annoyance, there was nothing in the leases to express the interest that the several lessees had in the hundred acres of unleased land belonging to the club and which they contemplated enjoying in common. This doubtless was deemed unnecessary because their interests were identical and all of the lessees were stockholders in the club and were the only stockholders therein. The real contention in the case below grew out of the failure of the leases to express the rights that the lessees felt that they had in the club property. The park board, seeking to conserve its own funds and minimize the compensation to be paid by it, insisted that the several lessees had a right to be compensated for the value of the several individual interests appropriated and the damages that resulted to the residue of their leasehold from the loss of part of the leased premises, and nothing more. The property owners insisted that they were entitled to all the damages that they suffered from the entire appropriation, including the loss that they would suffer by virtue of the one hundred acre tract being taken from the Glen Valley Club and given over to the park board. The situation was a complete one and in an attempt to simplify the case the Glen Valley Club at the opening of the trial waived its right to damages in the several leaseholds in favor of the several lessees.

MAUCK, J.

The princpal contention of the plaintiff in error in this court is that the judgment below does not conform to the park board's theory of the method in which compensation and damages should have been assessed, and prejudicial error is urged in that the court admitted testimony running to the damages to the individual lessees, which included the loss suffered by those lessees of the taking not of their own property only but the taking of the club property as well. This may be illustrated by taking the testimony relating to any one of the particular tracts. For instance, a witness was testifying to the Baxter tract on page 170. He had given his opinion of the fair market value of the whole tract. Thereupon this question was asked:

"What, if any, damage has there been to the residue after the taking by the park board of the property described in the application?"

This was objected to. The form of the question was bad in that the witness could not have testified over objection to the amount of damage. It is agreed, however, that this form of arriving at damages was acquiesced in by both parties and that the objection was only because the witness was permitted to include in his estimate of damages the loss suffererd by the owner by reason of the appropriation of the property in which the lessee had no direct interest. The objection was overruled by the court and the witness testified that the residue of the Baxter tract would be damaged to the extent of forty per cent of its value or $5,580, and this sum of $5,580 manifestly included damages that the owner of the Baxter property would suffer by reason of the club property passing from the control of the club, and by reason of the neighboring lessees' property in part passing from the control of those neighbors and being relieved from the restrictions imposed in the leases for the benefit of their lessees.

If the several leases had contained a provision that the one hundred acre tract of the Glen Valley Club was to be held intact by that club for the benefit of the several lessees it is apparent to us that the measure of damages claimed by the lessees would have been a proper one, and it is argued with much force and some apparent justice that as the several lessees thought that they were accomplishing the same purpose by their exclusive ownership of the stock of the club they ought not by a mere paper corporation of their own creation and control be deprived of an actual right although that right be not evidenced in the way contemplated by law. As we look at it, however, we are not confronted with the actual question argued and relied upon by the park board. While the bill of exceptions recites that the Glen Valley Club "waives whatever claim it may have for residue in favor of the owners and stockholders of these respective leases" the journal entry shows that the case was actually determined without any award at all being made to the lessees and that the sole award was to the club. As the testimony objected to was only calculated to enhance the award to the lessees it would seem to follow that when the lessees recovered nothing the error, if any, in the reception of the testimony complained of was not prejudicial unless it somehow appear that the final judgment was reached through the influence of this testimony. It does not so appear. The property appropriated was unique. It was a wild, rugged tract of slight value for ordinary commer-

cial uses. It is situated about thirteen miles from the public square of Cleveland. Much testimony of engineers and laymen was taken designed to show the possibility of its being made adaptable for home sites, etc., and while this testimony may have been helpful to the trial court we are inclined to accept the frank views of Mr. Chase, one of the lessees, who when questioned as to the fair market value of the property said:

"I would say that there is no market value for the property at all except between the park board and ourselves. That is about all it is good for in our opinion."

With but one insistent purchaser and an unwilling vendor the trial judge had a difficult question in ascertaining the value of the tract. The finding of the trial court was that the value of the land of the club actually appropriated was $101,986.80 and damages to the residue in the sum of $9,125. Was this award supported by the evidence? The testimony offered by the park board was that the tract appropriated had a market value of $47,930 (page 2083), $49,500 (page 1909) or $65,128 (page 1748). Witnesses called by the club tended to show a value ranging from $137,500 up to almost $200,000. A former judgment awarding the Glen Valley Club $51,160 and additional allowances to the several property owners of such sums as to bring the entire allowance up to $69,000 was reversed by the Court of Appeals of Cuyahoga County on the ground, as we understand it, that the amounts were inadequate. The value fixed by the trial court had to be something in excess of the value which the Court of Appeals had already determined to be inadequate. Another trial might and probably would result in a different amount being fixed, but we have no reason to believe that a more favorable finding for the park board would be had.

We can not determine that the finding of value was affected by the testimony objected to nor was the finding opposed to the weight of the evidence.

It is insisted by the plaintiff in error, however, that the trial judge arrived at the amount of the award by averaging the opinions of the witnesses testifying to values, and the written opinion of the judge is employed for the purpose of showing that fact. The opinion can not in our judgment be used for that purpose. It is no part of the record. It is not available to a party for the purpose of impeaching the finding. But the opinion referred to does not show that the finding was a quotient one. It can be interpreted to show that the judge was ex-

pressing his satisfaction that the judgment otherwise reached was in harmony with the aggregate views of the experts.

It is claimed, however, now by the park board that the failure to award to the lessees any compensation for the part of their leaseholds taken and any damages for the residue of their leaseholds violates the provision of both the statute and the constitution requiring that property owners be compensated for property taken in appropriation proceedings, and that a failure to comply with these provisions renders void a judgment that violates them. For support of this position reliance is had upon the principle laid down in State v Toledo Home Telephone Co, 72 Oh St 60. We do not accept this view. The case referred to was one where the court attempted to exercise a jurisdiction not conferred by law. Jurisdiction of the subject-matter being wanting the judgment attempted to be entered was void. In the case at bar the court had jurisdiction to assess damages for the lessees. The lessees had a right to require the court to ascertain their damages and enter judgment accordingly. They were, however, competent to waive their rights if they so desired. They happen to have two interests. One was the individual interest each had in his own leasehold, the other was the indirect interest each had by reason of his stock in the club. They were undergoing their third arduous trial and a trial not of their own seeking. The complications growing out of the interwoven interests rendered doubtful or at least difficult a final and satisfactory conclusion. Why under these circumstances can one not waive one right in order to simplify the protection of another and bigger right?

"The constitutional provisions relating to the exercise of the power of eminent domain are wholly for the protection of the individual property owner against the aggressions of government, and he may if he sees fit waive any of such provisions."

10 R. C. L. 18.

We were warned at the outset of the case by counsel for the plaintiff in error that there was danger that this court in this proceeding might be inclined toward affirmance because this is the third time that a judgment has been entered in this proceeding. We think, however, that we have been uninfluenced by expediency. The personal views of the court are that these lessees are going to eat their cake and have it too; that they are being paid the fair value of their park and will continue to enjoy the park under the wise administration

of the park board; that this is their good fortune, but that there is no error in the record available to the plaintiff in error.

Judgment affirmed.

FARR and MIDDLETON, JJ, concur.